Kimberly A. Case – 024345
**THE CASE LAW FIRM, PLLC**
2942 N. 24th St., Suite 114
Phoenix, Arizona 85016
p. 602.606.7955
kcase@caselawaz.com
*Attorneys for Damian Greco*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAMIAN GRECO,<br><br>              Plaintiff,<br><br>       vs.<br><br>GOLFSWITCH, INC., Larry Lippon, and Timothy Flynn<br><br>              Defendants. | Case No. 2:09-cv-02268<br><br>**COMPLAINT** |

Damian Greco, Plaintiff, by way of Complaint alleges upon information and belief as follows:

**PARTIES, JURISDICTION, VENUE AND JURY DEMAND**

1.     Damian Greco is a resident of the State of Colorado with a place of residence at 7150 South Clinton Street, Centennial, Colorado 80112 and is a citizen of the State of Colorado.

2.     GolfSwitch, Inc. is a corporation formed pursuant to the laws of the State of Nevada with a principle place of business located at 6380 E. Thomas Road, Suite 232, Scottsdale, Arizona 85251 and is authorized to conduct business in the State of Arizona and is a citizen of the State of Arizona.

3. Timothy Flynn, upon information and belief, is a resident of the State of Nevada with a principal residence of 3291 North Buffalo Drive, Suite 8, Las Vegas, Nevada and is a citizen of the State of Nevada.

4. Larry Lippon, upon information and belief, is a resident of the State of Arizona, City of Phoenix and is a citizen of the State of Arizona.

5. The matter in controversy herein exceeds, exclusive of costs and interests, the sum of Seventy-Five Thousand ($75,000.00) Dollars.

6. Federal jurisdiction is based on diversity of citizenship pursuant to and in accordance with 28 U.S.C. Section 1332.

7. The events, transactions and/or omissions giving rise to the claims herein occurred substantially in the City of Scottsdale, County of Maricopa, and State of Arizona.

8. Plaintiff demands that all issues triable before a jury be tried before a jury in accordance with the Seventh Amendment to the Constitution of the United States and Rule 38(b) of the Federal Rules of Civil Procedure.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. Larry Lippon is the holder of 25.5 percent of the issued and outstanding stock of GolfSwitch, Inc. and since its inception has been a Director thereof.

10. Timothy Flynn is the holder of 59.5 percent of the issued and outstanding stock of GolfSwitch, Inc. and since its inception has been a Director thereof.

11.    That Damian Greco is the holder of fifteen (15%) percent of the issued and outstanding stock of GolfSwitch, Inc. and since its formation and until October 30, 2008 was employed as the President and Chief Executive Officer of GolfSwitch, Inc.

12.    That the Board of Directors of GolfSwitch, Inc., since its formation, consisted of Larry Lippon and Timothy Flynn and in said capacity they conducted business within the State of Arizona. The cause of action herein took place and occurred in the State of Arizona.

13.    The rights, duties, obligations and liabilities relating to Damian Greco's employment as President and Chief Executive Officer was memorialized by a written Employment Agreement annexed as **Exhibit "A"** and made a part hereof.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT

14.    Plaintiff repeats and realleges each and every allegation of Paragraph 1 through 13 above as if more fully set forth at length herein.

15.    That from the time of its formation until October 30, 2008, Damian Greco acted as the President and Chief Operating Officer of GolfSwitch, Inc., was responsible for its day-to-day activities, its growth and its ability to be competitive in the marketplace. Any input on business decisions which required input from Larry Lippon and Timothy Flynn were customarily made via phone communication rather than formal Board or Shareholder's meeting with associated recording of minutes or written documentation.

16.    That in January of 2009, GolfSwitch, Inc. agreed to an increase Damian Greco's salary of Eight Thousand ($8,000.00) Dollars per month retroactive to December 1, 2007 pursuant to the express and consent and approval of Larry Lippon and Timothy Flynn.  Such increase in salary was reflected in the books and records of GolfSwitch, Inc. which were at all times available to Larry Lippon and Timothy Flynn and in the possession of Larry Lippon and Timothy Flynn.  Such increase in salary was approved by and known by all parties herein.  The retroactive portion of said salary increase was added to the outstanding balance of the loan referred to in Paragraph 20 below.

17.    That pursuant to the Employment Agreement and otherwise; in the event of termination (except for cause as defined in Paragraphs 8b and c thereof),  Damian Greco was entitled to termination benefits as follows:

a.    Sixty (60) days written notice with termination, with termination to become effective on a date specified by the Company but not earlier than the sixtieth day after said notice;

b.    Payment of his compensation for a period of twelve (12) months subsequent to a valid termination;

c.    Payment of his medical benefits for a period of twelve (12) months subsequent to a valid termination;

d.    Payment for unpaid vacation days;

e.    Payment of funds maintained in his GolfSwitch, Inc. retirement account.

4

18. That Damian Greco was also entitled to vacation time, sick leave and fringe benefits including, but not limited to, participation in any pension, medical reimbursement, and employee benefit plans maintained by GolfSwitch, Inc. and generally made available to other employees of the Company. These benefits have not been paid to Damian Greco.

19. That on October 30, 2008, without warning or fore notice and without cause, Damian Greco was summarily dismissed, fired and terminated from his position as President and Chief Executive Officer of GolfSwitch, Inc. and escorted out of the building with only his personal belongings and effects.

20. That thereupon, Damian Greco demanded payment of monies due him pursuant to the Employment Agreement set forth in Paragraph 12 above and demanded a statement specifically setting forth the purported cause for his termination, if any.

21. The Defendants responding by falsely denying the existence of any Employment Agreement and thus refused Damian Greco's demand for payments due thereunder including, but not limited to, severance and termination benefits under the Employment Agreement and continued to refuse to pay to Damian Greco the termination benefits referred to above thereby causing damage to him in an amount of believed to be in excess of Two Hundred Fifty Thousand ($250,000.00) Dollars.

22. Pursuant to the terms of the Employment Agreement, Damian Greco could only be terminated without cause by GolfSwitch, Inc. providing him with a sixty (60) day written notice. Such notice was never given to Damian Greco and thus regardless of the acts of GolfSwitch, Inc. in removing Damian Greco from the business

premises, the Contract has not been terminated and Damian Greco is thus entitled to all benefits arising therefrom since October 30, 2008 to the present and in the future until such Contract is properly terminated, at which time, he would be entitled to the termination benefits set forth in the agreement in addition thereto, thereby causing separate and additional damage to him an amount believed to be in excess of Two Hundred Fifty Thousand ($250,000.00) Dollars.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR MONIES LENT AND NOT REPAID

23.    Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 22 above as if more fully set forth at length herein.

24.    That in/or about March of 2006, Larry Lippon and Timothy Flynn, as Directors of GolfSwitch, Inc., authorized the institution of patent infringement litigation against a competitor in the Federal Court of Arizona under Docket Numbers: CV-06-0119-PHX-NVW and CU-06-1406-PHX-NVW.

25.    That in order to fund a portion of the costs thereof, Damian Greco was requested to lend to GolfSwitch, Inc. the sum of Two Hundred Twenty-Nine Thousand ($229,000.00) with interest at ten (10%) percent per annum to be used for litigation purposes.

26.    Said loan was reflected and set forth in the books and records of the corporation and was memorialized in writing.

27.    Commencing prior to his termination and culminating on/or about the date of termination, Larry Lippon and Timothy Flynn engaged in settlement negotiations and

settled said litigation while purposely withholding such action and information from Damian Greco.

28.    Subsequent to receipt of the proceeds of the secret settlement, Larry Lippon and Timothy Flynn repaid to themselves the sum of Three Hundred Seventy-Two Thousand Nine Hundred Twenty-One Dollars and Ninety-Two Cents ($372,921.92); and Eight Hundred Seventy Nine Thousand Two Hundred Thirteen Dollars and Seven Cents ($879,213.07) respectively and made a partial repayment of the loan and interest to Damian Greco of One Hundred Forty-Seven Thousand Eight Hundred Sixty Five Thousand and One Cent ($147,865.01) in April of 2009.  There remains due and owing on said loan the sum of One Hundred Twenty-Nine Thousand ($129,000.00) Dollars with interest no part of which has been paid although duly demanded.

29.    Damian Greco has been damaged thereby in the sum of One Hundred Twenty-Nine Thousand ($129,000.00) Dollars plus interest accruing thereon.

**AS AND FOR A THIRD CAUSE OF ACTION
FOR  DECLARATORY RELIEF AND/OR MONEY DAMAGES
FOR FRAUD, BREACH OF FIDUCIARY DUTY,
SECURITIES FRAUD AND COMMON-LAW FRAUD**

30.    Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 29 above as if more fully set forth at length herein.

31.    That in January of 2009, approximately ten (10) weeks after being summarily discharged, Larry Lippon and Timothy Flynn made a purported cash call advising Damian Greco thus unless he contributed Forty-Five Thousand One Hundred

Thirty-One Dollars and Sixty-Five Cents ($45,131.65) his stock interest in GolfSwitch, Inc. would be reduced from fifteen (15%) to thirteen (13%) percent of the issued and outstanding stock.

32.    That upon information and belief, this purported "cash call" was made contrary to the by-laws, the articles of incorporation and law was null and void and was made in contravention thereof.  To the best of Damian Greco's knowledge, no corporate meetings were held, no resolutions were passed and no prior discussion were held with Damian Greco regarding the need for the additional capital.

33.    That the invalidity of said cash call was compounded by the refusal by Timothy Flynn and Larry Lippon to provide financial information as to the financial standing, forecasts, need for capital infusion into GolfSwitch, Inc. or a Corporate valuation although directly requested by Damian Greco in writing.

34.    More importantly, Timothy Flynn and Larry Lippon failed and refused to advise Damian Greco of the status  of  the  patent  litigation  referred  to  above intentionally  withholding  from  him the fact that said case was settled, the settlement amount ,or their intention to distribute a portion of settlement proceeds to the stockholders of GolfSwitch, Inc. in repayment of loans made. Larry Lippon   and Timothy Flynn  also  failed  to  advise  Damian Greco  as to the status of ongoing negotiations with Comcast Communications Corp. and others for a potential purchase of GolfSwitch, Inc. Timothy Flynn  and  Larry Lippon  had  prior  thereto, according  to their  own  statements,   either received and/or turned down an offer of Seven Million ($7,000,000.00) Dollars and/or stated a refusal to consider any offer of a lesser amount.

35.     That any purported dilution of Damian Greco's interest in GolfSwitch, Inc. as a result of the above was unlawful, illegal and improper and in violation of corporate practices as set forth in the by-laws and Certificate of Incorporation, the fiduciary duties owed to minority stockholders; specifically, Damian Greco by Larry Lippon and Timothy Flynn.  Such action further consisted of seeking to obtain the benefit of insider information purposely withheld from Damian Greco in order to force him to make a decision regarding the cash call without material information known to Larry Lippon and Timothy Flynn but withheld from Damian Greco and consisted of a breach of their fiduciary duties to Damian Greco and fraud in the sale and offering of securities.

36.     That Damian Greco seeks a declaratory judgment that the attempted dilution of Damian Greco's interest in GolfSwitch, Inc. is null, void and ineffective and that his percentage equity ownership remains at fifteen (15%) percent of the issued and outstanding stock and/or that he is entitled to monetary damages equal to the value of the diminution of his equity interest in GolfSwitch, Inc.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR LIBEL AND DEFAMATION OF CHARACTER, BREACH OF FIDUCIARY DUTY, INTERFERENCE WITH ECONOMIC RIGHTS OF PLAINTIFF AND OPPORTUNITY

37.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 36 above as if more fully set forth at length herein.

38.     That in order to justify Damian Greco's termination to its employees, Larry Lippon and/or Timothy Flynn advised its employees including, but not

limited to, Ally Mahoney and Doug Reichel and others to be determined pursuant to rightful discovery that Damian Greco was terminated for cause.

39.    That such statements, both orally and in writing, are and were false, defamatory and libelous and cast aspersions on Damian Greco's business acumen and ability in actuality and by innuendo.  Said statements impugned and harmed the business reputation of Damian Greco.  As such, said statements are libelous and defamatory per se, Damian Greco is entitled to special, general and punitive damages.

40.    That to date; the Defendants, Timothy Flynn and Larry Lippon, have never specified to Damian Greco what acts Damian Greco allegedly engaged in constituting a reason for termination for cause or otherwise.

41.    That although Timothy Flynn and Larry Lippon caused GolfSwitch, Inc. to contest and Appeal Damian Greco's application for unemployment benefits by alleging he was fired for cause, on the day of the hearing of said appeal, Larry Lippon and Timothy Flynn cavalierly withdraw their appeal having their attorney advise the Hearing Office just prior to the commencement of the hearing that their witness was "unavailable".

42.    That upon information and belief, there was no "unavailable witness", just no available basis for Daman Greco's termination and a malicious attempt to improperly interfere with Damian Greco's right to unemployment benefits and a malicious attempt to further disparage the business reputation of Damian Greco.   In fact; even to the date hereof, the Defendants have failed to specify, in writing, the basis of their allegation of a "for cause" firing under the Employment Agreement.

43.     This was done in an  attempt and in conjunction with the invalid  cash call  above, the withholding of the knowledge of the settlement of the patent litigation and the intent to disburse a portion of the same to shareholders, and the refusal to pay contractual termination  benefits in  a concerted effort by Larry Lippon and Timothy Flynn to compel Damian Greco to accept an undervalued buyout of his stock interest in GolfSwitch, Inc. and to compromise his legal rights by placing him in an untenable financial circumstance based upon an unlawful summary termination thereby depriving Damian Greco of his salary (without forenotice) severance pay and loan repayment knowing that at the age of sixty-two (62), different  and  equal  employment opportunities would be difficult for him to secure especially given that state of the economy at the time of termination and the fact that  Larry Lippon and Timothy Flynn were  stating  Damian  Greco was fired for cause thus making use of his GolfSwitch, Inc. experience and expertise as a reference, a nullity and, in fact, an obstacle to re-employment.

44.     By reason of the above, Larry Lippon and Timothy Flynn breached their fiduciary duty to deal with minority stockholders and employees, specifically, Damian Greco, with fairness, honesty and openness and without personal animus and, to the contrary, specifically Larry Lippon and Timothy Flynn committed libel and slander as to Damian Greco,  all  with the intent to obtain an unfair advantage over Damian Greco and force him  to relinquish his legal rights as to GolfSwitch, Inc. for an unvalued amount.

11

**AS AND FOR A FIFTH CAUSE OF ACTION
FOR BREACH OF FIDUCIARY DUTY, MISREPRESENTATION,
CONSPIRACY TO COMMIT FRAUD, INTERFERENCE WITH
CONTRACTUAL RELATIONSHIPS AND INTERFERENCE WITH
ECONOMIC RIGHTS AND BENEFITS**

45.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 44 as if more fully set forth at length herein.

46.    That the Employment Agreement referred to above was the product of extensive negotiation between Damian Greco, Larry Lippon and Timothy Flynn and their corporate counsel, Robert Goldberg, Esq.  of  ELLIS, FUNK, GOLDBERG, LABOVITZ & DOKSON, P.C.

47.    That Larry Lippon and Timothy Flynn knew and were aware of the existence and execution of the Employment Agreement at the time it was executed and at the time they terminated Damian Greco's employment as is evidenced by their signatures thereon and all relevant times hereunder.

48.    At all relevant times, said Employment Agreement was in the possession of corporate counsel and said fact was known and/or should have been known by Larry Lippon and Timothy Flynn and could have been confirmed by merely contacting Mr. Robert Goldberg, Esq., their corporate counsel.

49.    At the time of execution of the Agreement, an originally signed Agreement was retained at the offices of GolfSwitch, Inc. and a duplicate original was sent to and retained by attorney Robert Goldberg, Esq., as corporate counsel.

50.    When Mr. Greco was summarily terminated in October of 2008, the original Employment Agreement was not within his files or records and it is believed to

have been removed therefrom by or at the direction of Timothy Flynn or Larry Lippon immediately prior to the time of his summary dismissal and summary escorted of the building in the hope that Plaintiff would be left without an executed Employment Agreement and thus unable to prove his rights to the benefits thereunder.

51. Thereafter; Larry Lippon and Timothy Flynn, although clearly aware of the existence of the Agreement and aware that an original was in the hands of corporate counsel, denied the Employment Agreement was ever executed obviously believing that Damian Greco was without the original or a copy of the same and thus felt free to deny its existence or any liability thereunder.

52. After thorough search of his personal files, Damian Greco recovered a copy of said Employment Agreement and a significant number of e-mails relating to the status and negotiation thereunder. This copy was forwarded to Larry Lippon and Timothy Flynn.

53. Not to be dissuaded from their fraudulent scheme, Larry Lippon and Timothy Flynn disputed the authenticity of the document and accused Damian Greco of fabricating the document and attaching their signature to the same by cutting and pasting the same for a different source or document.

54. It was not until contact was had directly with then corporate counsel, Robert Goldberg, Esq., by Damian Greco's representative demanding information regarding the existence of the Agreement and threatening said attorney with involvement in ensuing litigation and threatening litigation if the fraudulent scheme was aided and abetted by said attorney to detrimentally effect Damian Greco's contractual

rights and contractual relationship with GolfSwith, Inc. that Larry Lippon and Timothy Flynn gave up their ruse and acknowledged the existence of the Employment Agreement.

55.    The actions of Larry Lippon and Timothy Flynn above were in breach of their duties as Directors of GolfSwitch, Inc. to honor its rightful contracts, to act in an honest and forethought fashion with its employees and was a breach of their fiduciary duties to deal fairly and honestly with Damian Greco and was an intentional interference with Damian Greco's contractual rights and contractual relationship with GolfSwitch, Inc.  The Employment Agreement established a fiduciary relation.

56.    That the acts of Larry Lippon and Timothy Flynn as set forth above were done with malice aforethought, with a wanton disregard of the rights of Damian Greco and with the intent to deprive him of the bargain and consideration of his Employment Agreement with GolfSwitch, Inc.

57.    By reason of the direct, active and purposeful acts of Larry Lippon and Timothy Flynn in derogation of their duties as Directors of GolfSwitch, Inc. and the actual malice with which they acted, Larry Lippon and Timothy Flynn have made themselves personally liable for all damages suffered by Damian Greco, as well as, punitive and exemplary damages for willful and malicious conduct meant to deny Damian Greco of the benefits of his Employment Agreement and interfere with his contractual relationship with GolfSwitch, Inc. through trick, artifice and what may come to be termed criminal enterprise based upon the discovery as developed during the course of this action.

14

**WHEREFORE,** Plaintiff demands Judgment as follows:

1. On the First Cause of Action, monetary damages in an amount to be determined by the Court but in an amount of not less than $500,000.00.

2. On the Second Cause of Action, monetary damages in the amount of $129,000.00 plus interest from April, 2009 to the date of Judgment.

3. On the Third Cause of Action, a Judgment declaring Damian Greco to be the holder of 15% of the issued and outstanding stock of GolfSwitch, Inc. or in the alternative a monetary Judgment equal to the loss in value of Damian Greco's interest in GolfSwitch, Inc. from 15% to 13% of the outstanding and issued shares thereof.

4. On the Fourth Cause of Action, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $1,000,000.00.

5. On the Fifth Cause of Action, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $1,000,000.00.

RESPECTFULLY SUBMITTED this 29th day of October, 2009

**THE CASE LAW FIRM, PLLC**

By: /s/ Kimberly A. Case                    .
         Kimberly A. Case
         *Attorneys for the Plaintiff*

15